# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| John Wesley Williams, #269692, ) <br> a/k/a Joseph W. Williams, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> S.C.D.C. Jon Ozmint, Ridgeland Correctional ) <br> Institution Warden Levern Cohen, Assistant ) <br> Warden Anthony Burton, Major Christopher ) <br> Felder, in their individual and official capacities; ) <br> ) <br> Defendants. ) <br> _____ ) | C.A. No.: 8:07-3723-PMD <br><br><br> **ORDER** |

This matter is before the court on Plaintiff John Wesley Williams' ("Plaintiff") objections to the Report and Recommendation ("R&R") of a United States Magistrate Judge, which recommends the court grant Defendants' motion for summary judgment. Plaintiff, an inmate at the Ridgeland Correctional Institution, has brought a claim for monetary damages pursuant to 42 U.S.C. § 1983, alleging that he has wrongfully been required to wear a pink jumpsuit. Section 822 of the South Carolina Department of Corrections' ("SCDC") disciplinary policy requires inmates who are convicted of public masturbation or exhibitionism, upon release from disciplinary detention, to wear a pink-colored jumpsuit for a period of 90 days for their first conviction and one year for any subsequent convictions. A disciplinary hearing officer found Plaintiff guilty of masturbating in public while observing a female detention officer, which constituted his second sexual misconduct offense, and he now complains that Defendants violated his equal protection rights as well as his Eight Amendment right to be free from cruel and unusual punishment by forcing him to wear a pink jumpsuit and forcing other restrictions upon his everyday life in prison. Having reviewed the entire record, including Plaintiff's objections, the court adopts the Magistrate Judge's recommendation.

# STANDARD OF REVIEW

## I.   The Magistrate Judge's Report and Recommendation

The Magistrate Judge made her review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.*

## II.   Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

"obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327. The court remains mindful that Plaintiff is a *pro se* petitioner, and therefore, his pleadings are accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97 (1976). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

## ANALYSIS

### I.      Equal Protection Claim

Plaintiff alleges that his sexual misconduct offense is considered to be a level three offense by the SCDC, yet inmates found to be in violation of any of the other 25 SCDC policy level three offenses are not required to wear uniquely colored jumpsuits. Plaintiff also alleges that prisoners found guilty of violating the 13 more severe level one and level two offenses are also not required to wear a different colored jumpsuit. Because he has to wear the pink jumpsuit, Plaintiff alleges that he is verbally harassed by the escorting officers and ridiculed by other inmates. Plaintiff also complains that he is given his evening meal earlier and locked in his cell at an earlier time than other inmates; is denied the opportunity to work any place other than his housing dorm; is denied the right to attend a religious study group; is denied access to the library and law library; and denied access to the prison's gym—all because he is forced to wear a pink jumpsuit. Through these sanctions placed on him because of his sexual misconduct, Plaintiff claims that Defendants have violated his

equal protection rights.

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The general rule applicable to equal protection claims is that "the plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court next determines whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* When a prison regulation allegedly impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *Hause v. Vaught*, 993 F.2d 1079, 1082 (4th Cir. 1993) (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)). In analyzing such a claim, courts consider in determining whether a prison policy passes constitutional muster: (1) whether there is a valid, rational connection between the policy and the penological interest; (2) whether an alternative means of exercising the right remains open to prison inmates; (3) the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources; and (4) the absence of ready alternatives that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Id.* at 655. Of course, "[a] policy will not be sustained where the logical connection between the policy and the asserted goal is so remote as to render the policy arbitrary or irrational." *Morrison*, 239 F.3d at 655–56 (internal quotations and alterations omitted).

The Magistrate Judge recommends the court to grant Defendants' motion for summary judgment as to this claim. She found that Plaintiff failed to create an issue of fact as to whether he

has been treated differently than similarly situated inmates, as Plaintiff failed to allege that he received treatment different from any other inmate who is found guilty of sexual misconduct. Even to the extent Plaintiff could prove that he was being treated differently, the Magistrate Judge found that the pink jumpsuit policy is reasonably related to legitimate penological interests. In his objections, Plaintiff complains that the Magistrate Judge only focused on his allegation that he is wrongfully required to wear a pink jumpsuit, whose purpose, he alleges, is to humiliate him. Plaintiff reminds the court that he also believes the Defendants are denying him equal protection under the law by placing additional conditions on his everyday life in prison, such as eating his meals earlier and being locked up for the evening earlier, only because he is wearing the pink jumpsuit. He also believes that he has created an issue over whether or not the sanctions he received for his sexual conduct offense are rationally related to any penological interests.

After considering the distinction drawn by Defendants and SCDC policy between inmates who have committed sexual misconduct offenses and the rest of the general population, the court agrees with the Magistrate Judge's recommendation that both the distinction and the sanctions, including the pink jumpsuit, are rationally related to penological interests and do not violate Plaintiff's equal protection rights. As the Defendants have attested, the pink jumpsuit provides a visual identification to prison officials, especially female officers, that the prisoner has a recent history of sexual misconduct. While Plaintiff contends that no female officers work in his housing area and has provided affidavits from other inmates who also attest to this fact, the added security for female officers is still a conceivable legitimate purpose for requiring inmates convicted of sexual misconduct to wear pink jumpsuits. *See Khaliq v. Angelone*, 72 F. App'x 895, 901 (4th 2003) ("Even where similarly situated persons are treated differently, a state classification 'that neither proceeds

along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for [it].'") (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)).

Furthermore, any restrictions on the movement and activities of inmates convicted of sexual misconduct lessens the risk that an offender may commit another sexual misconduct offense, which Defendants attest could result in the transmittal of serious blood-borne pathogens, including H.I.V., hepatitis, and tuberculosis, through the throwing of semen at staff or applying semen to various items such as pens and paperwork, or in any other way disrupt the penological environment at a moment's notice. The jumpsuit serves as a disincentive to engage in unacceptable conduct in the first instance, and Defendants also contend that alternative policies, including segregation, loss of canteen privileges, and loss of good-time credits, are more expensive, ineffective against indigent inmates, and ineffective based on the sentencing strictures. Lastly, Plaintiff has an alternate means to exercise the loss of rights he complains of, which is to not commit the sexual misconduct offense in the first place. Based on these factors, the court adopts the Magistrate Judge's recommendation and finds that requiring Plaintiff to wear the pink jumpsuit and restricting his privileges and movements are rationally related to penological interests and grants Defendants' motion for summary judgment as to this claim. It's worth noting that other district courts in this state's district have reached the same conclusion. *See, e.g.*, *Govan v. Singleton*, 2009 U.S. Dist. LEXIS 25617, 2009 WL 799649 (D.S.C. March 24, 2009).

II.     **Cruel and Unusual Punishment**

Plaintiff also claims that the policy requiring him to wear a pink jumpsuit constitutes cruel and unusual punishment in violation of the Eighth Amendment. To state a claim that detention

conditions violate constitutional requirements, a petitioner must demonstrate "both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471 (4th Cir. 1999) (internal quotation marks and citation omitted). Plaintiff alleges that SCDC employees parade him and other inmates convicted of sexual misconduct to the kitchen, during which time Plaintiff is verbally harassed by the escorting officers and ridiculed by inmates not dressed in pink jumpsuits. Like with Plaintiff's equal protection claim, the Magistrate Judge recommends the court grant Defendants' motion for summary judgment as to this claim as well. Because Plaintiff only complains of being subject to humiliation and a risk of physical and sexual attack from other prisoners because he wears the pink jumpsuit, she found that Plaintiff failed to allege an accompanying physical injury to withstand summary judgment.

In his objections, Plaintiff claims that a threat or risk of physical injury is sufficient to state a claim pursuant to the Eighth Amendment and that he need not allege an injury which is physical in quality. To support his argument, he cites to *Helling v. McKinney*, in which the Supreme Court found that a prisoner does state a cause of action under the Eighth Amendment by alleging only that prison officials have, with deliberate indifference, exposed him to an unreasonable risk of serious damage to his future health. 509 U.S. 25, 35 (1993). As the Supreme Court noted, "It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." *Id.* at 33. Therefore, on this point, the court agrees with Plaintiff, and he is not required to show a physical injury to state a claim for cruel and unusual punishment in violation of the Eighth Amendment. More recently, the Supreme Court explained:

7

> [S]ubjecting individuals to a risk of future harm—not simply actually inflicting pain—can qualify as cruel and unusual punishment. To establish that such exposure violates the Eighth Amendment, however, the conditions presenting the risk must be 'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.' We have explained that to prevail on such a claim there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'

*Baze v. Rees*, 128 S. Ct. 1520 1530–31 (2008) (quoting, among other cases, *Helling v. McKinney*, 509 U.S. 25, 33, 34–35 (1993)). After considering Plaintiff's allegations and arguments, the court finds that Plaintiff has not established the sort of "objectively intolerable risk of harm" that qualifies as cruel and unusual. In his objections, Plaintiff admits that having to wear a pink jumpsuit only "possibly affects" his future health, (Objections at 2), and Defendant Jon Ozmint attested in an affidavit that no inmate has been assaulted because they were wearing a pink jumpsuit. (Ozmint Aff. ¶ 38.)

Without any other proof that having to wear a pink jumpsuit as punishment for his sexual misconduct creates an imminent and substantial risk of serious harm, or that the pink jumpsuit policy was applied "maliciously and sadistically for the very purpose of causing harm," the court must grant Defendants' motion for summary judgment as to this claim. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) ("Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.").

### III. Due Process Claim

8

Lastly, it appears that Plaintiff seems to think he was subject to an additional charge beyond the sexual misconduct offense and that he never received written notice from any SCDC authority informing him of the charge or of a disciplinary hearing. Thus, in his objections, Plaintiff claims that Defendants violated his due process rights by subjecting him to sanctions which were not ordered by the disciplinary hearing officer. It is true that institutions which seek to impose additional punishment on prisoners for violating a valid regulation must still afford an inmate the appropriate due process prior to such punishment. See *Wolff v. McDonnell*, 418 U.S. 539 (1974). Here, however, Plaintiff does not allege that he is subject to any sanctions which other sexual misconduct offenders are not. In fact, he states that all of the inmates required to wear pink jumpsuits are marched together in the prison, eat together and at the same time, and are locked up for the evening at the same time. As the Magistrate Judge already discussed in her R&R, Plaintiff received every bit of due process he was entitled to during his disciplinary hearing, and merely because the disciplinary hearing officer's final order only stated that Plaintiff is required to wear the pink jumpsuit and did not note every new restriction placed on Plaintiff's everyday prison life because of his new classification as a sexual misconduct offender does not mean he was denied due process. Moreover, as recognized by the Magistrate Judge, Plaintiff did not allege this claim in his complaint, but only seemed to craft it as the litigation in this matter progressed. Therefore, the court grants summary judgment to Defendants on this claim, to the extent Plaintiff's complaint can even be read to assert it.

## CONCLUSION

It is hereby **ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**June 2, 2010
Charleston, South Carolina**